**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

CAMERON CANTER,

              Plaintiff,

    v.

PRESTON CARUSO,
Serve:
621 Trestle Way,
Troy, MO 63379

CITY OF FLORISSANT, MISSOURI,
Serve:
1700 N Highway 67
Florissant, MO 63033

ANDRE REECE,
Serve:
1700 N Highway 67
Florissant, MO 63033

SHAWN REILAND,
Serve:
1700 N Highway 67
Florissant, MO 63033

ED SHARP,
Serve:
1700 N Highway 67
Florissant, MO 63033

VINCE GODFREY,
Serve:
1700 N Highway 67
Florissant, MO 63033

TIM FAGAN
Serve:
1700 N Highway 67
Florissant, MO 63033

              Defendants.

JURY TRIAL DEMANDED

**COMPLAINT**

1

COMES NOW Plaintiff Cameron Canter ("Plaintiff"), by and through undersigned counsel, and for his Complaint for Damages, hereby states as follows:

<u>**NATURE OF THE ACTION**</u>

1. On February 24, 2021, Defendant Preston Caruso, a Florissant police officer, responded to a complaint of loud music at private property on Mullanphy Road. When Defendant Caruso arrived, the loud music coming from a vehicle in a private driveway had already been abated. Plaintiff and his friend, Mr. Harris, who lived at the house on Mullanphy road, were sitting in Plaintiff's vehicle in Mr. Harris' private driveway. Defendant Caruso pulled up in front of Mr. Harris' house. As Plaintiff and Mr. Harris exited the vehicle in the private driveway, Defendant Caruso ordered them to get back inside. Defendant Caruso then said, "If you don't want to get back in, that's fine, I'll just tow this vehicle".

2. Now, Plaintiff and Mr. Harris were standing on Mr. Harris' property, not attempting to flee. Defendant Caruso stepped out of his vehicle. Defendant Caruso asked who lived at the house and Mr. Harris identified himself and stated he lived there. Defendant Caruso then attempted to get Plaintiff and Mr. Harris to leave the private property and walk over to Defendant Caruso's vehicle saying "we're gonna have a talk". Plaintiff and Mr. Harris responded that they weren't doing anything wrong, and Plaintiff Canter explained he was just hanging out with Mr. Harris, his co-worker, after work. The conversation continued while Plaintiff stood on Mr. Harris's property. Although the noise issue was abated, Officer Caruso continued to demand identification, grew agitated and called for backup.

3. While backup officers were approaching the scene, Defendant Caruso suddenly walked onto Mr. Harris' front lawn, did not announce or warn Plaintiff he was under arrest, grabbed Plaintiff's arm with both hands, immediately spun Plaintiff around

and whipped Plaintiff with incredible force, headfirst, into the side of Plaintiff's truck. Plaintiff was completely unprepared for Defendant Caruso's violent attack. The front of Plaintiff's head was slammed into his truck with significant force and Plaintiff collapsed to the ground immediately. While Plaintiff was on the ground, Officer Caruso mounted Plaintiff, grabbed Plaintiff and slammed Plaintiff's head and body with great force into the cement driveway, repeatedly. During this interaction, Defendant Caruso can be heard yelling and cursing at Plaintiff while yelling and cursing (e.g. "Mother****", "This is the last time I ask!!"). When the dust cleared, video shows Plaintiff's head bloodied and bright red pools of blood in the driveway. Plaintiff Canter, in obvious medical distress, was transported to the hospital by the other Florissant officers. Plaintiff sustained serious damage to his body and head, including a traumatic brain injury. Plaintiff brings this action seeking damages for violations of the Fourth and Fourteenth Amendments, cognizable under 42 U.S.C. § 1983.

## PARTIES

4.      Plaintiff Cameron Canter ("Plaintiff") is and was at all times relevant herein a citizen of the United States of America and a resident of the State of Missouri.

5.      Defendant Preston Caruso ("Defendant Caruso") was at all times relevant a police officer with the Florissant Police Department in St. Louis County, Missouri. He is sued in his individual capacity.

6.      Defendant City of Florissant, Missouri ("Florissant") is a body politic, municipal corporation and/or political subdivision of the State of Missouri, organized and existing pursuant to the Missouri Constitution and State Law. Defendant City of Florissant, Missouri operates with authority over the Florissant Police Department. Defendant Sgt. Andre Reece ("Defendant Reece") was at all times relevant to this Complaint a sergeant with the Florissant Police

3

Department in St. Louis County, Missouri with supervisory responsibility over Defendant Caruso, including his uses of force. For purposes of Plaintiff's federal claims, Defendant Reece is named in his individual capacity and was acting within the scope and course of employment and under color of law for Florissant Police Department and was a supervisor of Officer Caruso, including his use of force.

7.    Defendant Lieutenant Shawn Reiland ("Defendant Reiland") was at all times relevant to this Complaint a lieutenant with the Florissant Police Department in St. Louis County, Missouri with supervisory responsibility over Defendant Caruso, including his uses of force. For purposes of Plaintiff's federal claims, Defendant Reiland is named in his individual capacity and was acting within the scope and course of employment and under color of law for Florissant Police and was a supervisor of Officer Caruso, including his uses of force.

8.    Defendant Lieutenant Ed Sharp ("Defendant Sharp") was at all times relevant to this Complaint a lieutenant with the Florissant Police Department in St. Louis County, Missouri with supervisory responsibility over Defendant Caruso, including his uses of force. For purposes of Plaintiff's federal claims, Defendant Sharp is named in his individual capacity and was acting within the scope and course of employment and under color of law for Florissant Police and was a supervisor of Officer Caruso, including his use of force.

9.    Defendant Captain Vince Godfrey ("Defendant Godfrey") was at all times relevant to this Complaint a captain with the Florissant Police Department in St. Louis County, Missouri with supervisory responsibility over Defendant Caruso. For purposes of Plaintiff's federal claims, Defendant Godfrey is named in his individual capacity and was acting within

4

the scope and course of employment and under color of law for Florissant Police and was a supervisor of Officer Caruso, including his use of force.

10.     Defendant Chief Tim Fagan ("Defendant Fagan") was at all times relevant to this Complaint the Chief of the Florissant Police Department in St. Louis County, Missouri with supervisory responsibility over Defendant Caruso, including his uses of force. For purposes of Plaintiff's federal claims, Defendant Fagan is named in his individual capacity and was acting within the scope and course of employment and under color of law for Florissant Police, Missouri and was a supervisor of Officer Caruso, including his use of force, and was the final policy decision maker for Florissant Police Department.

## JURISDICTION AND VENUE

11.     Jurisdiction is proper to this Court, pursuant to 28 U.S.C. §§ 1331 and 1343, which provides this Court with original jurisdiction over cases and controversies raising federal questions and claims. Further, this Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in St. Louis County, Missouri.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

13.     The allegations contained above are hereby realleged and reincorporated as if fully set forth herein.

14.     On February 24, 2021, Defendant Caruso entered upon the private property located at 760 Mullanphy, Florissant Missouri.

15.     Plaintiff's co-worker Cortez Harris was staying at the property with his mother.

5

16.     Plaintiff was dropping off Mr. Harris after work and spending some time with him before Plaintiff went home.

17.     At all relevant times, Plaintiff was seated in a vehicle in a private driveway or standing on private property.

18.     Plaintiff did not present any vehicular or public safety risk.

19.     Defendant Caruso was at the scene responding to a complaint of loud music coming from the vehicle in the private driveway.

20.     The loud music had already been abated when Defendant Caruso arrived at 760 Mullanphy.

21.     Defendant Caruso spoke to Plaintiff and Mr. Harris who lived at 760 Mullanphy, and demanded Plaintiff show his identification.

22.     Defendant Caruso demanded Plaintiff's identification despite lacking reasonable suspicion or probable cause that Plaintiff had committed, was committing, or was about to commit any crime.

23.     Plaintiff informed Defendant Caruso that he was doing nothing wrong and was at his friend's house, visiting. The conversation continued for several minutes without incident.

24.     Despite the noise or music issue being abated, Defendant Caruso called for backup.

25.     Within moments of his backup arriving, Defendant Caruso grabbed Plaintiff by the arm and unleashed an attack upon Plaintiff. Defendant Caruso grabbed Plaintiff without warning. Plaintiff was not resisting and just standing on the lawn, and Defendant Caruso with significant force, whipped Plaintiff around in a nearly 360-degree turn and slung him head-first against Plaintiff's truck, slamming Plaintiff's head directly into his truck.

6

26.     After Defendant Caruso slammed Plaintiff's head into his truck, Plaintiff collapsed onto the ground knocked-out by the force.

27.     Defendant Caruso then dragged Plaintiff towards him, before mounting and grabbing him from behind while Plaintiff was prone and facing the ground. Defendant Caruso began slamming Plaintiff's head into the driveway pavement with great force, repeatedly, at least four times, while screaming and yelling at Plaintiff.

28.     Defendant Caruso was yelling and cursing, including screaming "Mutha**!", "What did I say!?".

29.     This incident all appears on dash and body camera footage from multiple angles.

30.     Plaintiff was unarmed, did not threaten Defendant Caruso or any other officer, did not attempt to flee, and was not resisting arrest or detention when Defendant Caruso initiated physical force.

31.     Defendant Caruso had no justification for this use of force.

32.     When the dust cleared after Plaintiff was beaten and slammed head first into his truck and then the pavement, Plaintiff was seen on video bleeding profusely from his head accompanied by pools of bright red blood on the pavement.

33.   As a direct result of being slammed headfirst into his vehicle and the pavement, Plaintiff sustained serious injuries including lacerations, stitches, concussion, traumatic brain injury and mental and psychological harms.

34.   Plaintiff is fortunate to have survived the attack and to be alive today.

35.   Following the incident, Defendant Caruso prepared a police report that materially mischaracterized Plaintiff's conduct in an effort to justify the force used against him.

36.     Obviously seriously injured, Plaintiff was taken to the hospital by EMS while in Florissant police custody.

37.     Florissant Supervisors immediately arrived at the scene and body and dash cameras captured some of the conversations.

38.     Following the attack on Plaintiff, Defendant Florissant and supervisory Defendants, upon information and belief, reviewed Defendant Caruso's use of force pursuant to policy, and despite the clear use of significant force reflected on video, the supervisory defendants imposed no discipline, approved and ratified Defendant Caruso's conduct, thereby endorsing the unconstitutional use of force against Plaintiff and continuing Florissant's failure to supervise and discipline their officers putting the public at risk[1].

39.    Caruso was involved in multiple uses of force prior to the incident involving Plaintiff, which were or should have been reviewed by all of his supervisory officers at the Florissant Police Department. Defendant Florissant and Defendant Police Supervisors of Caruso were aware of his history of excessive uses of force but did not discipline him or otherwise correct his conduct.

40.    As a direct result of the attack by Defendant Caruso, Plaintiff suffered lasting effects, including but not limited to the following: head and neck trauma, brain injury, fractures and facial trauma, chronic headaches; slowed speech, slowed movements, insomnia; depression; post-traumatic stress and other physical and mental injuries.

---

[1] Only more than a year after this incident did Florissant Police terminate their relationship with Defendant Caruso after he was involved in an incident on the side of a highway in which he, while off duty, attacked another person, punched him in the head, and threatened to murder him. " St. Louis County prosecutors allege Caruso was involved in a crash while off duty and was recorded by the other driver saying, "If you blame it on me, I'm going to [expletive] you up" as well as "I will murder you right here on the side of the road." Defendant Caruso was indicted by the St. Louis County Prosecuting Attorney's office for this conduct. https://fox2now.com/news/fox-files/fox-2-confronts-former-officer-on-shocking-highway-threats/

41.    The aforementioned effects of Plaintiff's injuries and damages will continue to adversely affect Plaintiff and require ongoing medical care.

42.    At all times relevant, Defendant Caruso's conduct was objectively unreasonable, and Defendant Florissant and the supervisory Defendants acted with deliberate indifference to Plaintiff's constitutional rights.

43.    As a direct and proximate result of the conduct of Defendant, Plaintiff has suffered and continues to suffer significant physical and psychological harm, pain and suffering, emotional distress, and other related damages.

44.    Under information and belief, an insurance policy exists that encompasses and covers the actions of the Defendant.[2]

45.    Plaintiff requests a trial by jury.

## COUNT I

### UNLAWFUL USE OF EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT, COGNIZABLE UNDER 42 U.S.C. § 1983
### *Against Defendant Caruso*

---

[2] When Plaintiff's allegations are made upon information and belief in this complaint, Plaintiff asserts that evidence supporting Plaintiff's allegations is within the sole possession and control of the defendant or where the belief is based on sufficient factual material (i.e. deposition testimony or records produced as part of limited Discovery) which makes the inferences plausible. This is particularly true as it relates to Plaintiff's Monell claims for failure to train, supervise or discipline which facts (including notice and pattern) are solely in the possession of Defendants. "[A]llegations pled on information and belief are not categorically insufficient to state a claim for relief where the proof supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible." *Ahern Rentals, Inc. v. EquipmentShare.com*, 59 F.4th 948, 954 (8th Cir. 2023). Ahren further asserts that prior to the parties being permitted to conduct discovery, at this stage of the proceedings, the Court may rely on a reasonable inference or belief that information needed for Plaintiff's claims are in the sole possession of the defendant(s). Id., at 954. See also Tashonda Troupe v. Anthony Young, et al., No. 24-1036 (8th Cir. July 11, 2025).

41. Plaintiff hereby incorporates the preceding paragraphs by reference and as if set forth fully herein.

41. Plaintiff Canter had a clearly established Constitutional right to be free from the excessive use of force by Florissant police officers including Defendant Caruso.

42. Defendant Caruso was not responding to any serious or violent crime and had no basis to escalate the encounter into a physical seizure.

43. The reason for Defendant Caruso's call to the address, loud music, had been abated before Defendant Caruso arrived at the scene.

44. Defendant Caruso's use of force was objectively unreasonable under the totality of the circumstances and violated Plaintiff's clearly established Fourth Amendment rights, particularly because Plaintiff was unarmed, was not suspected of a serious crime, did not threaten the officers, did not threaten the safety of himself or others, was not acting violently, was not fleeing, and was not otherwise behaving in a manner that posed any obvious danger to anyone.

41. By slamming Plaintiff's head against a car and repeatedly slamming his head and body against the pavement, Defendant Caruso escalated the danger of the situation and put Plaintiff at risk of serious physical and mental injury.

42. As a direct and proximate result of Defendant Caruso's unlawful actions, Plaintiff suffered damages, including but not limited to physical injury and mental injury.

43. The conduct of Defendant Caruso involved reckless or callous indifference to Plaintiff's federally protected rights, thereby warranting punitive damages under 42 U.S.C. § 1983.

44. At all times relevant, Defendant Caruso was acting under the color of state law.

10

**WHEREFORE**, Plaintiff prays this Honorable Court award Plaintiff damages compensatory and punitive damages in an amount to be proven at trial in excess of $1,000,000.00; and all costs of the action as is deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

**COUNT II**

**UNCONSTITUTIONAL FAILURE TO TRAIN, SUPERVISE, OR DISCIPLINE PURSUANT TO 42 U.S.C. § 1983 IN VIOLATION OF THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION**
*Against Defendant City of Florissant Missouri, Sgt. Andre Reece, Lieutenant Sharp, Lieutenant Reiland, Captain Godfrey, Chief Tim Fagan*

45. Plaintiff hereby incorporates the preceding paragraphs by reference and as if set forth fully herein.

46. At all times relevant hereto, Defendant Florissant was responsible for overseeing the policies and practices of the Florissant Police Department, as well as the training, supervision, and discipline of police officers related to those policies and practices.

47. Defendant Florissant violated Plaintiff's Fourth Amendment rights by failing to train, supervise, and discipline its officers regarding the constitutional limits on the use of force despite the obvious need for training, supervision and discipline and the prior notice of Florissant to similar constitutional violations.

48. The violations of Plaintiff's constitutional rights under the Fourth Amendment, Plaintiff's damages, and the conduct of Defendant Caruso were directly and proximately caused by the actions and/or inactions of Defendant Florissant, which has been deliberately indifferent in its failure to train, supervise, and discipline.

49. Pursuant to Florissant Police Department policy, all uses of force are documented in written reports and are required to be reviewed and approved by supervisory personnel. Upon information and

11

belief, Defendant Caruso's prior uses of force were documented and reviewed by one or more of the below-named supervisory Defendants prior to February 2021.

50.    Defendants Reece, Sharp, Reiland, Godfrey, and Fagan each exercised supervisory authority over Defendant Caruso, were aware of his prior uses of force, were aware of a pattern of unconstitutional uses of force by Caruso and other Florissant officers, reviewed or were responsible for reviewing Defendant Caruso's use of force against Plaintiff, and failed to take reasonable steps to prevent or discipline unconstitutional conduct. Their deliberate indifference and failure to act directly caused and contributed to Plaintiff's injuries.

51.    Upon information and belief, in the years preceding February 2021, Defendant Caruso and other Florissant officers were involved in multiple documented use-of-force incidents many of which were excessive uses of force which resulted in no meaningful discipline, suspension, or mandatory retraining.

52.    Florissant supervisors are required to forward summaries of use-of-force incidents to command staff and the Chief of Police for review. Upon information and belief, Defendant Fagan received periodic reports reflecting prior uses of force by Defendant Caruso and other Florissant officers.

53.    Upon information and belief, prior citizen complaints alleging excessive or unnecessary force were lodged against Defendant Caruso and other Florissant officers and those complaints were closed without findings or corrective action.

54.    Pursuant to Florissant Police Department policy, each use of force is required to be documented and reviewed by supervisory personnel. Upon information and belief, Defendant Caruso's prior uses of force were documented and reviewed by supervisory Defendants prior to February 2021, and no meaningful discipline, suspension, remedial

training, or corrective action was imposed. These repeated reviews placed supervisory Defendants and Defendant Fagan on actual notice of Defendant Caruso's pattern of force prior to the incident involving Plaintiff.

55. Upon information and belief, prior civil litigation and prior criminal charges involving Florissant officers generated internal review, media coverage, and public scrutiny, which further placed Defendant Fagan and command staff supervisory defendants on notice of recurring allegations of unconstitutional force. Despite this notice, Florissant did not implement structural reforms, enhanced supervision, or discipline sufficient to prevent the type of excessive force used against Plaintiff.

56. Upon information and belief, the above-named supervisor defendants including City of Florissant were also aware that Defendant Caruso, prior to his interaction with Plaintiff, had serious temper and anger management problems within the police department.

57. Prior to the incident involving Plaintiff, the above-named supervisory Defendants were on notice of a pattern of unconstitutional and excessive force by officers within the Florissant Police Department, including but not limited to Defendant Caruso, through citizen complaints, internal investigations, use-of-force reviews, and supervisory reporting mechanisms. Despite this notice of a pattern, Defendants failed to implement corrective training, supervision, or discipline. Defendants were also on notice of the *obviousness* of the need to train, supervise and discipline their officers, including Officer Caruso.

58. At all relevant times, Defendant Chief Tim Fagan was the final policymaker for the City of Florissant with respect to police officer discipline, use-of-force standards, and the investigation and resolution of excessive force incidents. His decisions regarding officer discipline and approval of uses of force were final and not subject to meaningful review by any higher municipal authority.

59. Florissant Police Chief Tim Fagan ratified the actions and use of force by Officer Caruso, and was the final policymaker responsible for the training, supervision, and discipline of officers in the Florissant Police Department.

60. Following Defendant Caruso's use of force against Plaintiff, Defendant Fagan and other supervisory Defendants, upon information and belief, reviewed the incident, including available video evidence and use-of-force reports, and made a conscious decision not to discipline, retrain, or correct Defendant Caruso. This decision Defendant Fagan and other supervisory Defendants constituted approval and ratification of Defendant Caruso's unconstitutional conduct.

61. By ratifying Defendant Caruso's conduct, Defendant Fagan established and enforced municipal policy approving the use of significant force against non-threatening individuals, rendering Defendant Florissant liable for the resulting constitutional violations.

62. Defendant Florissant's failure to properly train, supervise, and discipline Defendant Caruso for his use of force against Plaintiff also constituted a tacit authorization of Defendant Caruso's offensive acts.

63. The failure of the above-named Defendants to act in response to known unconstitutional uses of force and the failure to train and supervise despite the obvious need for training and supervision was the moving force behind the violation of Plaintiff's constitutional rights.

64. Defendant Caruso's use of excessive force against Plaintiff was a direct and foreseeable consequence of Florissant's longstanding failure to discipline and retrain officers despite prior notice of similar unconstitutional force.

14

65.     As a direct and proximate result of the above-named Defendant's failures, Defendant Caruso violated Plaintiff's civil rights and Plaintiff suffered damages to which he is entitled under 42 U.S.C. § 1983.

66.     The conduct of the above-named Defendants involved reckless or callous indifference to Plaintiff's federally protected rights, thereby warranting punitive damages under 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff prays this Honorable Court award Plaintiff damages compensatory and punitive damages in an amount to be proven at trial well in excess of $1,000,000.00; and all costs of the action as is deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

**COUNT III**
**UNCONSTITUTIONAL POLICY, CUSTOM OR PRACTICE IN VIOLATION**
**OF THE FOURTH AMENDMENT, PURSUANT TO 42 U.S.C. § 1983**
*against Defendant City of Florissant*

67.     Plaintiff hereby incorporates the preceding paragraphs by reference as if fully set forth herein.

68.     At all times relevant hereto, Defendant City of Florissant maintained a widespread, persistent, and well-settled custom of tolerating, approving, and failing to discipline unconstitutional uses of excessive force by its police officers.

69.     Upon information and belief, prior to the unconstitutional use of force against Plaintiff, Florissant had a documented history of similar unconstitutional uses of excessive force, including prior citizen complaints, internal affairs investigations, use-of-force reviews, and/or civil claims involving Defendant Caruso and other officers, the details of which are within the exclusive custody and control of Defendant City of Florissant.

70.     Prior to February 2021, the City of Florissant had been the subject of multiple allegations and lawsuits involving the use of excessive force by its police officers. In 2013, a federal civil rights

action arising from the fatal shooting of Abayomi Afolabi alleged that Florissant officers used deadly force against him while he sat in his vehicle outside his home. In 2017, another § 1983 action alleged that Florissant officers used excessive force during an arrest, including deploying a taser, striking the plaintiff with a baton, and using force after the plaintiff was subdued. In September 2019, a Florissant officer discharged his firearm at a fleeing suspect.

71.     In June 2020, a Florissant officer was criminally charged after video showed him striking a fleeing individual with an unmarked police SUV and then using additional physical force. The officer was subsequently charged with first-degree assault, armed criminal action, and fourth-degree assault in connection with that incident. This incident prompted sustained public protests, which in turn led to further allegation that Florissant officers used excessive force against non-violent protestors.

72.     Plaintiff alleges, under information and belief, Defendant Florissant was on notice of many more and other unconstitutional uses of force, but evidence of these unconstitutional uses of force are non-public and exclusively within the custody and control of Defendant Florissant. "[A]llegations pled on information and belief are not categorically insufficient to state a claim for relief where the proof supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible." *Ahern Rentals, Inc. v. EquipmentShare.com*, 59 F.4th 948, 954 (8th Cir. 2023). See also *Tashonda Troupe v. Anthony Young, et al.*, No. 24-1036 (8th Cir. July 11, 2025).

73.     Collectively, these incidents placed the City on notice of repeated allegations of excessive and unlawful force by its officers prior to the events giving rise to Plaintiff's claims.   These events support Plaintiff's contention that prior to the incident involving

Plaintiff, the City was on notice of repeated allegations of unconstitutional force and enforcement practices by its officers

74.     This widespread, persistent, and well-settled custom of tolerating, approving, and failing to discipline unconstitutional uses of excessive force was demonstrated by repeated incidents of excessive force, including but not limited to prior uses of force by Defendant Caruso and other officers, which were known to supervisory personnel and policymakers within the Florissant Police Department.

75.     Despite notice of these unconstitutional custom or practices, Defendant Florissant failed to meaningfully investigate, discipline, retrain, or correct officers who engaged in excessive force, thereby tacitly authorizing such conduct.

76.     This longstanding custom of deliberate indifference to unconstitutional uses of force was the moving force behind Defendant Caruso's use of excessive force against Plaintiff and as a direct and proximate result of this unconstitutional custom, Plaintiff suffered the injuries and damages described herein.

**WHEREFORE**, Plaintiff prays this Honorable Court award Plaintiff damages compensatory damages in an amount to be proven at trial well in excess of $1,000,000.00; and all costs of the action as is deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

Dated: February 23, 2026

Respectfully submitted,

Mark J. Pedroli, MBE 50787

17

-

**PEDROLI LAW, LLC**
7777 Bonhomme Ave, Suite 2100
Clayton, Missouri 63105
314.669.1817
314.785.7400 Fax
Mark@PedroliLaw.com
*Attorney for Plaintiff Cameron Canter*